360 So.2d 16 (1978)
The TRAVELERS INSURANCE COMPANY, a Foreign Corporation, Appellant,
v.
Marti B. GRAY, by Her Father and Next Friend, Billy G. Gray, and Billy G. Gray, Individually, Appellees.
Nos. 77-354, 77-477.
District Court of Appeal of Florida, Third District.
May 30, 1978.
Rehearing Denied July 14, 1978.
High, Stack, Lazenby & Bender and Alan R. Dakan, Miami, for appellant.
Ezzo & Garel and Bruce A. Saylor, Miami, for appellees.
Before PEARSON, NATHAN and KEHOE, JJ.
KEHOE, Judge.
Appellant, plaintiff below, brings these consolidated appeals from an order dated January 21, 1977, granting appellee Marti B. Gray's motion for summary judgment and denying appellant's motion for summary judgment, and from a final judgment dated February 16, 1977, incorporating and making final the order of January 21, 1977. For the reasons set forth below, we reverse.
The following statement of facts is based upon the stipulated statement of facts on appeal filed in the record.
*17 Appellee Marti B. Gray, a minor, was injured on July 17, 1975, in an automobile accident with Mrs. Bledsoe. At that time, Mrs. Bledsoe was insured with The Kenilworth Insurance Company under a policy containing applicable limits of $15,000.00. (Mrs. Bledsoe is not a party to this action). At the time of the accident, Marti was residing in the household of appellee Billy G. Gray, her father. Mr. Gray had in effect an automobile liability policy, issued by appellant The Travelers Insurance Company, which had uninsured motorist limits of $35,000.00. Marti was an insured under the Travelers policy, insofar as she had a right to claim benefits thereunder.
Appellees brought suit against Mrs. Bledsoe and her insurer, The Kenilworth Insurance Company. During the pendency of that suit, The Kenilworth Insurance Company paid to appellees its policy limits of $15,000.00. The Grays did not execute any release in exchange for the policy limits; however, they did enter into a stipulation dismissing with prejudice the case against Mrs. Bledsoe and her insurer. Pursuant to this stipulation, the trial court on March 18, 1976, entered an order of dismissal. The relevant portion of the order of dismissal reads as follows:
"... that the above and foregoing cause be and the same is hereby dismissed with prejudice to the Plaintiff herein, that Defendant go hence without day..."
Appellant never gave its written consent to the stipulation or the order of dismissal.
After the stipulation and the order of dismissal were entered by the trial court, appellees filed a demand for arbitration against appellant seeking to recover benefits, in excess of the $15,000, under the uninsured motorist provision of their policy, pursuant to the "under-insured" provisions of Section 627.727, Florida Statutes (1975). For purpose of this appeal, no issue was raised about the extent of the minor appellee's damages, and the parties concede that this issue would be one for arbitration. Subsequently, appellant filed a complaint for a declaratory judgment which reads, in pertinent part, as follows:
"That the Defendants [appellees herein] are not entitled to coverage under the aforementioned policy issued to Billy G. Gray by the Plaintiff [appellant herein] inasmuch as (the Stipulation and Order of Dismissal) was contrary to the policy provision set forth in (TRAVELERS insurance policy) in that said settlement was entered into without the written consent of the Plaintiff."
In response, appellees raised as affirmative defenses: (1) that no release had been executed; and (2) that appellant had been made aware of the progress of negotiations prior to the execution of the stipulation and order of dismissal and, having raised no objections to the negotiation, thereby, waived any possible objection to the settlement. Appellant denied the affirmative defenses. Prior to the trial court's entry of summary judgment in favor of appellees, no facts were ever adduced as to appellant's knowledge of the negotiations.
Upon the facts as stated, both appellant and appellees moved for summary judgments. Thereafter, the trial court entered an order granting appellees' motion for summary judgment and, subsequently, entered a final judgment on the issue of coverage. The final judgment dismissed with prejudice appellant's complaint for declaratory judgment. From this order and final judgment, appellant appeals.
Appellant's basic contention on appeal is that appellees were not entitled to "under-insured" coverage under their policy because appellees had entered into a settlement with the tort-feasor and her insurer contrary to the provisions of the policy.
Appellees contend that they may recover under the uninsured motorist provision of their policy with appellant, even though they had received the policy limits of $15,000 from the tort-feasor's insurance company, because they had not executed any release and their policy limits exceeded those of the tort-feasor's policy.
Appellees argue that, pursuant to Section 627.727(3), Florida Statutes (1975), the uninsured motorist provision of their policy applies *18 where such coverage limits exceed the bodily injury limits of a tort-feasor's policy. Assuming this to be true, appellees' argument is misplaced. Section 627.727(2)(b), Florida Statutes (1975), provides that:
"(2) For the purpose of this coverage, the term `uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
* * * * * *
(b) Has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist's coverage." [Emphasis added.]
Although Section 627.727(3) may provide "under-insured" coverage to appellees under their policy with appellant, this Section, when read in conjunction with Section 627.727(2)(b), clearly makes such coverage subject to the other valid terms and conditions of the policy. In the instant case, one of the provisions of the policy, in regard to the unauthorized settlement of uninsured motorist claims, reads as follows:
"This insured motorist part does not apply:
* * * * * *
b. Unauthorized Settlement. To bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefore."
Another provision, in regard to subrogation, reads as follows:
"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights or recovery therefore against any person or organization and, with respect to Part b, all rights of recovery therefore which the injured person or anyone receiving such payment may have against any person or organization. The insured, or with respect to Part B such person, shall execute and deliver instruments and papers, do whatever is necessary to secure such rights and shall do nothing after loss to prejudice such rights."
We do not think that Section 627.727(3) abrogates either of these provisions of the policy. In our opinion, appellees, by entering into the stipulation dismissing with prejudice their cause of action against the tort-feasor, Mrs. Bledsoe, and her insurer, The Kenilworth Insurance Company, made in effect a settlement contrary to the provisions of their policy with appellant. Accordingly, appellees' failure to comply with the valid terms and conditions set forth in these provisions caused them to lose their "under-insured" coverage under their policy with appellant. Such a result, i.e., of losing coverage for failure to comply with the terms and conditions of a policy, is not a novel one. See, e.g., Arrieta v. Volkswagen Insurance Company, 343 So.2d 918 (Fla. 3d DCA 1977); Sena v. State Farm Mutual Automobile Insurance Company, 305 So.2d 243 (Fla. 3d DCA 1974); and McInnis v. State Farm Mutual Automobile Insurance Company, 208 So.2d 481 (Fla. 4th DCA 1968).
Because of this determination, it follows that the trial court erred in entering the order and final judgment appealed granting summary judgment in favor of appellees. Therefore, the order and final judgment are reversed and the cause is remanded for further proceedings consistent with this opinion.
Reversed and remanded.