Dorothy WESCOTT

v.

ALLSTATE INSURANCE.

Supreme Judicial Court of Maine.

Jan. 18, 1979.

Lewellyn R. Michaud (orally), Bangor, for plaintiff.

Berman, Berman & Simmons, P. A., by Gary Goldberg (orally), Jack H. Simmons, Lewiston, for defendant.

Before WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ., and DUFRESNE, A. R. J.

DUFRESNE,[1] Active Retired Justice.

Dorothy Wescott, the plaintiff-appellant, appeals from a summary judgment granted by a Justice of the Superior Court in favor of the defendant-appellee, Allstate Insurance Company (Allstate). The sources in the record, upon which the trial Court rested its decision that there existed no genuine issue as to any material fact and that Allstate was entitled to a judgment as a matter of law, consisted of the pleadings in the case, interrogatories and answers thereto, a copy of the insurance policy issued by Allstate to the appellant, together with the affidavit of one James Murray, District Claims Manager of Allstate, given in support of the motion for summary judgment. For the purpose of testing the propriety of rendering summary judgment, we accept as true the following uncontroverted facts disclosed by the reference record. See *Levesque v. Fraser Paper Limited*, 159 Me. 131, 132, 189 A.2d 375, 376 (1963); *Steeves v. Irwin*, Me., 233 A.2d 126, 130 (1967).

On September 1, 1973, Dorothy Wescott, the appellant, was a passenger in an insured automobile owned and operated by one Helen W. Brissette, when the Brissette auto collided with an uninsured automobile driven by one Richard W. Heath. As a result of the accident, Ms. Wescott claims that she suffered such severe and painful injuries, including a fractured jaw, a fractured left elbow, a fractured left hip, a broken finger, that she is now permanently incapacitated by reason thereof. She further maintains that she sustained substantial losses of earnings and incurred considerable expense for medical and hospital care.

Ms. Wescott negotiated an out-of-court settlement with Brissette's insurer, Commercial Union Assurance Company (Commercial). Commercial paid the appellant $20,000.00, the full amount of coverage in the uninsured motorist part of its policy covering the Brissette automobile.[2] As part of the settlement, plaintiff executed a release and trust agreement in favor of Commercial only, reserving her rights against any other person or organization.[3]

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

2. Although the Brissette-Commercial policy was not made a part of the present record, it is probable, and we will assume it, that the policy did contain a provision similar to that in Allstate-Wescott policy, which defines an "insured" under the uninsured motorist endorsement to include "any . . . person while occupying an insured automobile."

3. In relevant part, the release provides that
 "the payment made by the Company [Commercial] is accepted as a compromise and full settlement for all sums which are or shall become due under the uninsured motorist coverage . . . This agreement is not intended to release any claim or cause of action against any person or organization legally responsible for causing the injury on account of which said payment is made."
 In addition thereto, the appellant granted Commercial subrogation rights against "any person or organization legally responsible for causing the injury on account of which said payment is made."

Subsequent to the settlement with Commercial, Ms. Wescott sought additional indemnification for her injuries from her own automobile insurance carrier, Allstate, under the uninsured motorist coverage provided in her policy. Allstate turned down Ms. Wescott's claim for additional compensation. This led to the appellant's instant complaint brought against Allstate on August 30, 1974 in the Superior Court, Penobscot County, for the recovery of $20,000.00, the top amount of coverage under Allstate's uninsured motorist policy to Ms. Wescott.[4]

After the filing of its amended answer and the use of discovery procedures, Allstate moved for summary judgment pursuant to Rule 56, M.R.Civ.P. The presiding Justice granted Allstate's motion and Ms. Wescott appeals from the ensuing summary judgment entered on March 22, 1976. We sustain the appeal.

### Defects in prosecution of appeal

Initially, Allstate contends that its motion for dismissal of the appeal for procedural errors in its prosecution should be granted by this Court. We disagree.

▉ The appeal was seasonably taken within 30 days of the entry of the summary judgment, since the notice of appeal was filed with the Superior Court on April 20, 1976. Rule 73(a), M.R.Civ.P. True, on June 16, 1976, the appellant mistakenly filed in the Law Court a motion for enlargement of time in which to file the designation of the contents of the record on appeal. This error was not rectified until June 21, 1976, when the motion for enlargement of time was filed in the Superior Court and granted by the Justice below on June 22, 1976. Contending that the Superior Court Justice had no jurisdiction to enlarge the time, as he did on June 22, 1976, Allstate sought to have the order vacated by letter to the Justice on June 25, 1976.

The Justice denied the request on June 28, 1976. On motion and order under date of August 16, 1976 a second extension to August 30, 1976 was obtained and the designation was filed on the final day of this extension.

Rule 74(a), M.R.Civ.P., then, provided in pertinent part:

> "Not later than 60 days after an appeal to the Law Court is taken, the appellant shall serve upon the appellee and file with the clerk a designation of the portions of the record, proceedings, and evidence to be contained in the record on appeal, unless the appellee has already served and filed a designation. *In all cases the court in its discretion and with or without motion or notice may extend the time for serving and filing the designation, if its order for extension is made before the expiration of the period for serving and filing as originally prescribed or as extended by a previous order* or by stipulation under Rule 76A(a)." (Emphasis supplied)

In this case, the sixtieth day following the filing of the notice of appeal fell on Saturday, June 19, 1976. Under Rule 6(a), M.R.Civ.P., the appellant could move for an extension of time through Monday, June 21, 1976. Although the appellant complied with the prescribed time period, the Superior Court failed to issue its order granting the motion until Tuesday, June 22, 1976.

▉ It is apparent that the Superior Court acted improperly in granting the extension on a day beyond the permitted period of time under the rules. But the time transgression did not affect the validity of the appeal as it was not jurisdictional. And, we cannot agree with Allstate that this impropriety warrants dismissal of the appeal.

▉ Rule 73(a), M.R.Civ.P., then, outlined the governing procedure for an appellee to

---

4. We note that Heath, the uninsured motorist, has not been joined as a party to this action. Also, Allstate does not contest Wescott's right to sue Allstate directly without first proceeding against the uninsured motorist. Hence, we need not address the point, whether an insured

has the right to bring a direct action against her insurer as the plaintiff did under the circumstances of this case. See A. Widiss, A Guide to Uninsured Motorist Coverage § 7.16–7.17 (1969); 73 A.L.R.3d 632 (1976).

follow in the event the appellant failed to abide by the applicable time limits for filing motions and other papers on appeal. It provided in pertinent part as follows:

"Failure of the appellant to take any of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal; but the appeal will be dismissed for appellant's failure to take any such further step within the time prescribed therefor unless the Law Court shall determine that exceptional circumstances excuse the failure and justice demands that the appeal be heard. The court on motion shall enter an order that the appeal be dismissed for such failure if the appellant does not within 10 days file with the court a motion seeking to be relieved from the consequences of such failure."

Allstate never addressed a motion for dismissal of the appeal at the Superior Court level pursuant to Rule 73(a), M.R.Civ.P. The Superior Court, and not the Law Court, had jurisdiction over the appeal at the time of this error, since it occurred prior to the transmission of the record to the Law Court. Indeed, Rule 74(p), M.R.Civ.P., then, provided in pertinent part:

"The clerk [of the Superior Court] shall thereupon transmit 12 copies of the record to the Clerk of the Law Court and furnish a copy of the record to counsel for each of the parties. The case shall be marked 'law' on the docket and no further action shall be taken thereon until certification of disposition thereof in the Law Court. The case shall be docketed in the Law Court upon receipt of the record on appeal."

See *Isely v. Wilkins*, Me., 253 A.2d 51, at 52 (1969), where we said that the vesting of jurisdiction in the Law Court under Rule 74(p) occurred only upon the filing of the record and designation of the case as "Law."

■ Should we sanction a competing procedure, contrary to the procedural requirements of Rule 73(a), M.R.Civ.P., permitting an appellee to address directly to

the Law Court a motion for dismissal of an appeal for failure of the appellant to take any of the further steps procedurally required for review of the judgment appealed from, such as presented in the instant case by Allstate's motion to dismiss the appeal without previous action thereon at the trial level, we would be undermining the orderly procedures in the proper administration of justice promulgated by the Supreme Judicial Court. Thus, we hold that, in line with the mandatory directive to seek the just, speedy and inexpensive determination of every action as provided in Rule 1 of the Maine Rules of Civil Procedure, we must construe Rule 73(a), relating to the reference motion to dismiss an appeal for any breakdown in appellate procedures and requiring initial action thereon in the trial court, as the exclusive procedural device for remedial relief, save for exceptional circumstances meeting the "manifest error-serious injustice" standard. See *Mandarelli v. McGovern*, Me., 393 A.2d 533 (1978).

■ The same would be true respecting Allstate's objection to this appeal based on the appellant's failure to file a statement of points on appeal, as then required by Rule 74(d), M.R.Civ.P., when an appellant does not designate for inclusion the complete record and all the proceedings and evidence in the action. Absent exceptional circumstances, we need not consider on the merits Allstate's motion to dismiss the appellant's appeal.

■ Allstate, however, also asserts that, independently of any other procedural noncompliance with the rules of civil procedure, the appellant's tardy filing of her brief would warrant a dismissal of the appeal by the Law Court for failure of prosecution.

Rule 75, M.R.Civ.P., then read:

(a) "The appellant shall file his brief within 20 days after the date on which the record on appeal is docketed in the Law Court, the appellee shall file his brief within 20 days after service of the brief of the appellant, and the appellant may file a reply brief within 14 days after service of the brief of the appellee."

\* \* \* \* \* \*

**163**

(c) "If an appellant fails to comply with this rule, the Law Court *may* dismiss the appeal for want of prosecution. If an appellee fails to comply with this rule, he will not be heard at oral argument except by permission of the Law Court." (Emphasis provided)

Initially, let us say that the failure to comply with the time requirements set by the rules respecting the filing of briefs on appeal does not deprive the appellate court of jurisdiction to hear the appeal. *Application of United States Crude Oil Purchasing Co.,* 167 N.W.2d 537 (N.D.1969); *United Truck Lines v. Department of Public Works,* 181 Wash. 318, 42 P.2d 1104 (1935).

█ Rule 75 of the Maine Rules of Civil Procedure, the structured schedule within which the briefs of the parties shall be filed, was promulgated for the purpose of promoting an orderly administration of the appeal process, keeping within the control of the court the prosecution of the pending case toward its final disposition and advancing the interests of the parties in securing to them "the just, speedy and inexpensive determination" of their action, free from undue delays or inconveniences. *MacArthur v. Cannon,* 4 Conn.Cir. 208, 229 A.2d 372 (1967), certification denied 154 Conn. 748, 227 A.2d 562 (1967).

█ Construed liberally as mandated by Rule 1, M.R.Civ.P. to achieve its stated purposes, Rule 75(c), in its use of the word "may" in the context of the appeal dismissal sanction to the effect that

"[i]f an appellant fails to comply with this rule, the Law Court may dismiss the appeal for want of prosecution,"

was not intended to be mandatory in the sense of the word "must," but rather permissive, subject to the exercise by the Law Court of a sound judicial discretion looking toward justice and avoiding injustice which a strict adherence to the time restrictions

might produce. See *MacArthur v. Cannon,* supra; *White v. Smith,* 440 S.W.2d 497 (Mo. App.1969).

█ It is the policy of the law to favor, wherever possible, a hearing on the merits, whether at the trial level or at the appellate level. We would be loath to dismiss an appeal for late filing of a brief, a helping aid to the Court, if in fact the delay in the filing of the brief has not resulted in any substantial inconvenience, detriment or prejudice to the other party. *Foster-Porter Enterprises v. De Mare,* 198 Md. 20, 81 A.2d 325 (1951).

█ In the instant case, it does not appear that Allstate was in any way inconvenienced or prejudiced by the late filing. The appellee's motion to dismiss the appeal will be denied, as the enforcement of the rule rests in the sound discretion of the Law Court. See *Long & Allstatter Co. v. Willis,* 48 Ohio App. 366, 193 N.E. 774 (1934); *Inter-Island Resorts, Ltd. v. Akahane,* 44 Haw. 93, 352 P.2d 856 (1960).[5]

*Merits of the appeal*

█ The issue before this Court is the propriety of the grant of summary judgment in favor of Allstate by the trial Justice. In deciding that question, we must have in mind that the burden of showing entitlement to summary judgment rests on the party moving for such a disposition of the case by the Court, although Rule 56(c) expressly authorizes summary judgment, when appropriate, to be rendered against the moving party. *Atkins v. Atkins,* Me., 376 A.2d 856 (1977); *Akerley v. Lammi,* Me., 217 A.2d 396 (1966). A party's invocation of the summary judgment procedure is not a submission of issues of fact to the court for decision, but is only a request to the court for a determination, whether any genuine question of fact exists in the case. *Tallwood Land & Development Co. v. Botka,* Me., 352 A.2d 753 (1976). The presence

5. Our ruling, however, should not be viewed as a condonation of future non-compliance with the strictures of the rules, as the consequences to ensue for violation of the time requirements in filing briefs must be dealt with on a case by

case basis. See *Illinois State Toll Highway Authority v. Karn,* 9 Ill.App.3d 784, 293 N.E.2d 162 (1973); *Little v. Little,* 35 N.J.Super. 157, 113 A.2d 524 (1955).

of unresolved genuine and critical issues of fact bars the granting of summary judgment in favor of either party. *Hilton v. State*, Me., 348 A.2d 242 (1975); *Soper v. St. Regis Paper Company*, Me., 341 A.2d 8 (1975); *Statler Industries, Inc. v. Board of Environmental Protection*, Me., 333 A.2d 703 (1975); *Beckwith v. Rossi*, 157 Me. 532, 175 A.2d 732 (1961).

*Sufficiency of the affidavit supporting the motion for summary judgment*

■ Rule 56(e), M.R.Civ.P., mandates that

"[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Allstate's affidavit in support of its motion for summary judgment was made by the District Claims Manager of the Company for the State of Maine. It was fatally deficient so far as it attempted to set forth as fact that Allstate had no notice of any settlement or settlement negotiations prior to the settlement and execution of the release and trust agreement between the appellant and Commercial and that Allstate never consented in writing or otherwise to any such settlement, because it was made on information and belief, rather than upon personal knowledge.

■ We are aware that an affidavit, even if stated to have been made on information and belief, may be sufficient within the requirements of the rule, provided that, when viewed in its entirety, it "shows obviously that all pertinent parts thereof were made from personal knowledge" of the affiant. *Steeves v. Irwin*, Me., 233 A.2d 126, 130 (1967). See Field, McKusick & Wroth, Maine Civil Practice, § 56.5 (2d ed. 1970). In order to be considered as supplying verified factual support to a motion for summary judgment, the affidavit must show *affirmatively* that the affiant has personal knowledge of the matters asserted. Although it identifies the affiant as Allstate's

District Claims Manager for the State of Maine, the instant affidavit fails to disclose in any definite manner that Murray, as District Claims Manager, held such a position with Allstate that he would necessarily be apprised of the facts attested to in the affidavit. Nowhere does the affidavit set forth the nature of the affiant's duties, nor the Company's policies and ways of operation whereby he would obtain personal knowledge of the facts stated. To presume personal knowledge of the facts verified by Murray simply from his status of District Claims Manager would be pure speculation.

■ Hence, it was error for the Court below to refuse to strike the affidavit on motion. Regardless, summary judgment would still be appropriate, if "the pleadings, depositions, answers to interrogatories, and admissions on file" otherwise established that "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Rule 56(c), M.R.Civ.P.; *Steeves v. Irwin*, supra, at 130. Disregarding the Murray affidavit and considering this record, including the documents before the presiding Justice, we must conclude this is not a case where we can say that it is evident as a matter of law that the appellant cannot recover. After resolution of the legal points raised by the terms of the uninsured motorist endorsement of the appellant's policy issued to her by Allstate, we must conclude that Ms. Wescott will still have to prove as in tort her legal entitlement to damages from Heath, the uninsured motorist, and the amount thereof, in order to recover from Allstate. With genuine issues of fact remaining unresolved, it was error for the presiding Justice to grant Allstate's motion for summary judgment.

*Effect of Policy Provisions respecting certain exclusions and conditions*

Allstate contends that its motion for summary judgment was properly granted by the Superior Court Justice, because under the terms of the policy which it issued to Wescott respecting uninsured motorist coverage it is not liable to the appellant for the

following stated reasons: 1) the no-consent clause excludes coverage in the instant case, because the appellant without the written consent of Allstate made a settlement with Commercial, Brissette's insurer, in the amount of $20,000.00, the full coverage of the Brissette policy under that policy's uninsured motorist provisions:[6] 2) the appellant in making settlement with Commercial violated a condition of the Allstate policy which provided that, in the event of payment by Allstate, such person "shall do nothing after loss to prejudice such [subrogation] rights;" and 3) Allstate is exempted from any obligation to pay by reason of the excess-escape clause and the so-called offset or reduction clause contained in the conditions appended to the uninsured motorist coverage.[7] We disagree with Allstate on all three points.

The validity of the stated policy provisions and of the appellee's contentions based thereon must be determined in the light of the requirements of 24-A M.R.S.A., § 2902 (the uninsured vehicle coverage section), which reads in part as follows:

1. "No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. The coverage herein required may be referred to as 'uninsured vehicle coverage.' "

2. "The amount of coverage to be so provided shall be not less than the minimum limits for bodily injury liability insurance provided for under the motorists financial responsibility laws of this State [$20,000.00]."

* * * * * *

4. "In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily

6. The "no-consent" clause of the Allstate-Wescott insurance policy provides in pertinent part:
 "This Section [Section II—Protection against bodily injury by uninsured automobiles] does not apply:
 to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of Allstate, make any settlement with any person or organization who may be legally liable therefor; . . . ."

7. The excess-escape clause, so far as pertinent herein, read as follows:
 "*Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by the named insured [the case here], the insurance under this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and Allstate shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance [pro rata clause]."
The offset or reduction clause seeks to limit liability in this way:
 "Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by
 (1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator or such bodily injury including all sums paid under the Bodily Injury Liability Coverage of the policy, . . . ."

injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle."

There is no dispute between the parties that, but for the appellant's settlement with Commercial, Allstate under the terms of the uninsured motorist coverage of the Allstate-Wescott policy was obligated to pay Ms. Wescott as the named insured

"all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . . ."

The disagreement concerns the stated limitations of the policy expressed in terms of exclusions or conditions of the insurance contract.

The question at issue is, whether the Legislature in enacting the uninsured motorist legislation precluded the modified coverage argued for by Allstate. As stated in *Collins v. Motorists Mutual Insurance Company*, 36 Mich.App. 424, 194 N.W.2d 148 (1971), in connection with a similar statute:

"The most logical manner in which to ascertain the intention of the legislature is through the wording of the statute. It is only when a statute is ambiguous that a court is forced to interpret it in terms of legislative intent. Here, the meaning of the statute is clear; it provides, without uncertainty or ambiguity, that no automobile liability policy shall be issued in this state unless it provides coverage, in the statutory minimum amounts, for the protection of the persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. The statute does not say that each insured should have access to the minimum statutory amount of insurance to compensate him for losses caused by an uninsured

motorist, but that *each policy* of insurance shall provide such coverage." (Emphasis in original)

It is a principle well recognized by this Court that a contract, including an automobile liability insurance policy, is presumed to incorporate all relevant mandatory provisions of the statutes under which it was made, as existing statutes governing the subject matter of a contract must under normal circumstances be read as a constituent part thereof. *Security Insurance Group v. Emery*, Me., 272 A.2d 736 (1971); *Camire v. Commercial Insurance Co.*, 160 Me. 112, 198 A.2d 168 (1964); *Sullivan v. Prudential Insurance Co.*, 131 Me. 228, 160 A. 777 (1932). Our Court further ruled in these cases that mandatory statutory provisions control, even when not included in the insurance contract, and, to the extent that policy terms are repugnant to the express or implied requirements of the statute, they are void and unenforceable. *Concord General Mutual Insurance Co. v. McLain*, Me., 270 A.2d 362 (1970). Accord: *Stephens v. Allied Mutual Insurance Company*, 182 Neb. 562, 156 N.W.2d 133 (1968); *Gulf American Fire & Casualty Company v. McNeal*, 115 Ga.App. 286, 154 S.E.2d 411 (1967); *Bryant v. State Farm Mutual Automobile Ins. Co.*, 205 Va. 897, 140 S.E.2d 817 (1965).

The obvious design of our uninsured vehicle coverage statute is to protect a responsible insured motorist against the hazards presented by the operation of motor vehicles where injuries are inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene and in most instances is financially unable to furnish adequate compensation for the injuries caused in the accident. The legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium. As stated in *Rhault v. Tsagarakos*, 361 F.Supp. 202 (U.S.D.C.—D.Vt.1973):

"The statute has fashioned the means to benefit an insured who has provided protection for others, to obtain protection

for himself. Of course he pays a premium for this protection. Thus the law attempts to provide coverage in the insured's own policy, and at his premium, where it does not exist with the other operator so that he may have at least the statutory protection in all events. And the court must construe the policy and the statutory provision to achieve the primary purpose of the enactment."

See also *American Mutual Insurance Company v. Romero*, 428 F.2d 870, 873 (10th Cir. 1970); *Charest v. Union Mutual Ins. Co. of Providence*, 113 N.H. 683, 313 A.2d 407 (1973).

In contrast with the liberal construction to be given the remedial statute mandating uninsured motorist coverage in all liability insurance policies issued with respect to any vehicle registered or principally garaged in this State (see *Clayton v. Alliance Mutual Casualty Company*, 212 Kan. 640, 512 P.2d 507 (1973)), courts, in order to carry out the primary purpose of such legislation, will construe conditions and exceptions of the insurance contract, inserted therein in an attempt to limit the coverage prescribed by the statute, strictly against the insurer and liberally in favor of the insured. *Farm Bureau Mutual Ins. Co. v. Waugh*, 159 Me. 115, 188 A.2d 889 (1963); *Michigan Mutual Liability Company v. Karsten*, 13 Mich.App. 46, 163 N.W.2d 670, 672 (1968).

A forfeiture, which would result if Allstate's arguments would prevail, is to be construed strictly. Its enforcement is not to be favored. *North Berwick Co. v. New England F. & M. Ins. Co.*, 52 Me. 336, 340 (1864); *Russell v. Granite State Fire Ins. Co.*, 121 Me. 248, 252, 116 A. 554, 556 (1922). On the other hand, by enacting the uninsured vehicle coverage statute, the Legislature has indicated a strong public policy in favor of the just compensation of accident victims. See *Hawaiian Insurance*

& Guaranty Co. v. Mead, 14 Wash.App. 43, 538 P.2d 865, 873 (1975).

*Exclusion clause—no consent to settlement*

Allstate argues that it has no legal obligation under the Allstate-Wescott policy to make any compensation to the appellant, because Ms. Wescott made a settlement in the amount of $20,000.00 with Commercial, Brissette's insurer, without the written consent of Allstate. The exclusion clause does provide that the uninsured vehicle coverage in the Allstate-Wescott policy does not apply to bodily injury to the insured with respect to which the insured shall, without written consent of Allstate, make any settlement with any person or organization who may be legally liable therefor.

The uninsured motorist statute is to be construed so as to assure a person injured by an uninsured motorist that he will be able to recover, from whatever source available, up to the total amount of his damages. Insofar as the clause restricts the insured's right to compromise and settle his claim against financially responsible motorists who might be liable to him, it is contrary to the purpose of the statute, is against public policy and unenforceable. To permit third party settlements to work a forfeiture of the uninsured motorist protection would destroy the very purpose which the Legislature sought to achieve, i. e. financial responsibility up to policy limits to the extent of the satisfaction of such damage as the insured is legally entitled to recover from an uninsured motorist.[8] *Rhault v. Tsagarakos*, supra, at page 207. We agree with such rationale. Accord: *Lebs v. State Farm Mut. Auto. Ins. Co.*, 568 S.W.2d 592 (Mo.App.1978); *Government Employees Insurance Co. v. Shara*, 137 N.J.Super. 142, 348 A.2d 212 (1975); *Hawaiian Insurance & Guaranty Co. v. Mead*, 14 Wash.App. 43, 538

8. In the instant case, there was no settlement with the uninsured motorist. The Wescott release was solely for the benefit of Commercial, Brissette's insurer, with a reservation of rights against any other person or organization legally responsible for causing the injury on account of which Commercial made the payment. We intimate no opinion as to the enforceability of the exclusion clause, if the uninsured motorist had been released from liability in consideration of the settlement payment.

P.2d 865 (1975); *Harthcock v. State Farm Mutual Automobile Ins. Co.*, 248 So.2d 456 (Miss.1971); *Gulf American Fire & Casualty Company v. McNeal*, 115 Ga.App. 286, 154 S.E.2d 411 (1967). Contra: *Travelers Ins. Co. v. Gray*, 360 So.2d 16 (Fla.App. 1978); *Worobec v. State Farm Mut. Auto. Ins. Co.*, 200 Neb. 210, 263 N.W.2d 95 (1978); *Aetna Cas. & Sur. Co. v. Poirier*, 356 N.E.2d 452 (Mass.1976); *State Farm Mutual Automobile Ins. Co. v. Ford*, 537 S.W.2d 138 (Tex.Civ.App.1976); *Charest v. Union Mutual Ins. Co. of Providence*, 113 N.H. 683, 313 A.2d 407 (1973); *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971).

We believe the reasoning of those courts which reject such liability limiting clauses as the no-consent-to-settlement exclusion is more in line with the policy and purpose of Maine's uninsured vehicle coverage statute. Hence, we hold that the no-consent-to-settlement exclusion clause contained in the Allstate-Wescott policy is no defense where the insured settled with a person other than the uninsured tortfeasor.

*Exclusion clause in light of the statutory provision respecting subrogation rights*

Allstate argues that the Legislature could not have intended outlawing the no-consent-to-settlement clause in the instant case where Commercial settled with the appellant under the uninsured vehicle coverage of the Brissette policy, since 24–A M.R.S.A. § 2902(4) provides that

"[i]n the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment *the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made,* and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle." (Emphasis added)

The same argument is made in favor of the alleged validity of the reduction clause of the policy, which reads that

"*[a]ny amount payable* under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage *shall be reduced by*

(1) *all sums paid* on account of such bodily injury *by or on behalf of* (i) the owner or operator of the uninsured automobile and (ii) *any other person or organization jointly or severally liable together with such owner or operator* for such bodily injury including all sums paid under the Bodily Injury Liability Coverage of the policy, . . . ." (Emphasis supplied)

Allstate claims that the statutory protective legislation of subrogation rights under the uninsured vehicle coverage impliedly indicates legislative recognition that the insurer may contract to exclude coverage or provide for reduction of the amount due, if the insured without consent settles with, or receives payment from or on behalf of, the uninsured motorist or any other person or organization jointly or severally liable with the uninsured motorist for the bodily injury sustained in the accident. Any other construction, it asserts, would frustrate the exercise of its right of subrogation. We disagree.

We concede that the insurer's purpose in having in the policy the no-consent-to-settlement exclusion clause and the provision for reducing the insurer's obligation by all sums paid on account of the bodily injury sustained in the accident from other sources is the protection of the insurer's potential right to subrogation against persons who may be legally liable therefor. But 24–A, M.R.S.A., § 2902(4) only assures to the insurer, once it has made payment under the uninsured vehicle coverage, entitlement or subrogation rights "to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle." Both the no-consent-to-settlement exclusion and the offset-reduction clauses of

the Allstate-Wescott policy attempt to extend the reach of its statutory subrogation rights to include the proceeds of any settlement or recovery from not only "any person" but also from "any organization" legally responsible for the bodily injury as to which payment was made. The term "organization" was obviously intended to cover the insurance outfit or unit which made the settlement payment. The Maine statute does not, as the Louisiana statute does, specifically give subrogation rights against the "organization" legally responsible for the bodily injury for which payment was made. See *Hebert v. Green*, 311 So.2d 223, 228 (La.1975). The statute does, however, make special mention of subrogation rights to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

It would have been very easy for the Legislature, if it intended to extend subrogation rights to proceeds from insurance organizations obligated by contract to pay for persons legally responsible for the bodily injury, to use appropriate language granting subrogation rights generally to amounts recoverable from any insurer of the other motor vehicle. The maxim-expressio unius est exclusio alterius—is well recognized in Maine as in other states. It is a handy tool to be used at times in ascertaining the intention of the lawmaking body. Cf. *Whorff, Petr. v. Johnson*, 143 Me. 198, 58 A.2d 553 (1948).

The dominant purpose of the mandatory uninsured vehicle coverage statute is to provide a source for the collection by the insured victim of an accident of all sums which he is legally entitled to recover as damages against the owner or operator of an uninsured motor vehicle. In view of the fact that this remedial statute must be construed liberally in favor of the insured victim and strictly against the insurer, that part of the statute granting subsidiary rights of subrogation to the insurer must be given that narrow interpretation which favors full satisfaction by the insured victim of his damages to which he is legally entitled to recover from the owners or operators of the uninsured vehicle before the right of subrogation attaches. Both clauses of the Allstate-Wescott policy—the no-consent-to-settlement exclusion clause and the offset-reduction condition—have the effect of chilling any settlements with joint tortfeasors and their insurers and put in that respect a frustrating restriction upon the mandatory coverage under the statute, and, for that reason, are void and unenforceable. See *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716 (Mo.App.1978); *White v. Nationwide Mutual Insurance Company*, 361 F.2d 785 (4th Cir. 1966).

### Other Insurance Clause: Excess-escape clause

 By the great weight of authority, an excess-escape clause such as contained in the Allstate-Wescott policy (see footnote 7, supra) is void as against public policy and unenforceable.[9] We agree and conclude that, where a covenant not to sue is executed by the passenger of an insured vehicle in favor of, and in settlement with, the host driver's uninsured motorist insurer, the release document expressly stating that the settlement "is not intended to release any claim or cause of action against any person or organization legally responsible for causing the injury on account of which

**9.** *Keel v. MFA Insurance Company*, 553 P.2d 153 (Okl.1976); *Clayton v. Alliance Mutual Casualty Company*, 212 Kan. 640, 512 P.2d 507, 514 (1973); *Harthcock v. State Farm Mutual Automobile Ins. Co.*, 248 So.2d 456 (Miss.1971); *Blakeslee v. Farm Bureau Mutual Insurance Co.*, 32 Mich.App. 115, 188 N.W.2d 216 (1971); *Transportation Insurance Company v. Wade*, 11 Ariz.App. 14, 461 P.2d 190 (1970); *Morelock v. Millers' Mutual Insurance Ass'n*, 125 Ill. App.2d 283, 260 N.E.2d 477, 479–480 (1970) (Cf. *Tuthill v. State Farm Insurance Company*, 19 Ill.App.3d 491, 311 N.E.2d 770 (1974)); *Sellers v. United States Fidelity & Guaranty Co.*, 185 So.2d 689 (Fla.1966); *Bryant v. State Farm Mutual Automobile Ins. Co.*, 205 Va. 897, 140 S.E.2d 817, 820 (1965).

Contra: *M.F.A. Mutual Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968); *Grunfeld v. Pacific Automobile Insurance Company*, 232 Cal.App.2d 4, 42 Cal.Rptr. 516 (1965); *Burcham v. Farmers Insurance Exchange*, 255 Iowa 69, 121 N.W.2d 500 (1963).

said payment is made," the mere fact that the passenger acknowledged therein accepting the payment "as a compromise and full settlement for all sums which are or shall become due under the uninsured motorist coverage" did not bar action by the passenger against her own uninsured motorist insurer for damages factually remaining unsatisfied in the settlement agreement. *Lebs v. State Farm Mut. Auto. Ins. Co.*, 568 S.W.2d 592 (Mo.App.1978).

■ The Maine statute compels the insurance industry to make uninsured vehicle coverage available as a condition of the delivery or issuance for delivery in this state of any liability insurance policy arising out of the ownership, maintenance or use of any motor vehicle registered or principally garaged in this state. The statute fixes a minimum standard of protection against the uninsured motorist, rather than a maximum. The statutory language does not profess to impose any ceiling upon the insured's right of recovery. It would seem logical to believe our Legislators, in enacting the uninsured vehicle legislation, were aware that many motorists are insured under multiple insurance policies, under their own as well as under policies issued to the owners or operators of vehicles in which they may be injured while passengers therein. If the Legislature had intended to limit the injured insured to recovery under one policy only, it would seem that it would have so indicated by proper expression. Since the statute explicitly states without any equivocation whatever that each liability policy must supply the required minimum degree of protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured vehicles, any legal recognition of the "excess-escape" clause under the uninsured vehicle coverage portion of such insurance policies would subvert the purpose of the statute and frustrate the State policy. Hence, such clause is void and unenforceable.[10] *Pickering v. American Em-*

*ployers Insurance Co.*, 109 R.I. 143, 282 A.2d 584, 591 (1971).

Even if it might be said that our present holding may result in a windfall, because the insured is permitted recovery in excess of what she would have received if the uninsured motorist had been insured for the minimum amount required under our Financial Responsibility Act (29 M.R.S.A. §§ 781–788), such is not inconsistent with the uninsured vehicle coverage legislation which, we believe, was intended to protect an insured to the extent of his actual loss.

As stated in *Van Tassel v. Horace Mann Insurance Company*, 296 Minn. 181, 207 N.W.2d 348, 352 (1973):

"But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium."

See also *Pleitgen v. Farmers Insurance Exchange*, 296 Minn. 191, 207 N.W.2d 535 (1973).

Under the terms of the uninsured motorist endorsement, the appellant must now prove her legal entitlement to damages from the uninsured motorist, as in tort, in order to recover from Allstate. Since there existed factual issues of liability and damages which remained undetermined, it was error for the Superior Court Justice to grant summary judgment in favor of Allstate.

The entry will be

Allstate's motion to dismiss the appeal denied. Appeal sustained. Summary judgment vacated.

Order granting summary judgment set aside. Remanded to the Superior Court for entry of order denying motion for summary judgment and for further proceedings consistent with this opinion.

POMEROY, J., did not sit.

10. Neither litigant pressed argument upon the meaning or enforceability of the second paragraph of the "other insurance clause," i. e. the so-called "pro rata" provision. We intimate no opinion thereon, except as our discussion of the "excess-escape" clause may affect the same.