Michael D. TIBBETTS, et al.

v.

**MAINE BONDING AND CASUALTY CO.**

Supreme Judicial Court of Maine.

Argued Nov. 4, 1992.
Decided Dec. 30, 1992.

Paul F. Macri (orally), Berman & Simmons, Lewiston, for plaintiff.

Christopher C. Dinan (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

The plaintiffs, Michael D. Tibbetts, Velzora Tibbetts, and Michael Tibbetts, II, appeal from a summary judgment in favor of the defendant, Maine Bonding and Casualty Co., entered in the Superior Court (Androscoggin County, *Alexander, J.*). They contend that the trial court erred in determining, as a matter of law, that pursuant to the terms of its automobile insurance policy providing underinsured motorist coverage to the Tibbettses Maine Bonding may reduce its obligation to the Tibbettses by the amount of the settlement the Tibbettses received from an insured joint tortfeasor. We agree with the Tibbettses' contention and vacate the judgment.

The following facts are undisputed: In February 1991, the vehicle in which the Tibbettses were riding was involved in a three-car accident with vehicles operated by Roland Guerette and Sandra Whalon. The Tibbettses, who claim damages exceeding $600,000, settled with Guerette for $300,000, which represents the limit of Guerette's liability insurance coverage. Whalon has motorist liability insurance in the statutory minimum amount of $20,000 per person and $40,000 per accident. The Tibbettses' insurance policy with Maine Bonding provides underinsured motorist coverage in the amount of $300,000 and contains a policy limit reduction clause governing the underinsured motorist coverage that states:

> B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
>
> 1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.

The Tibbettses by their complaint against Maine Bonding sought coverage pursuant to the underinsured motorist provisions of their automobile insurance policy alleging that at the time of the accident Whalon was an underinsured motorist whose negligence proximately caused the Tibbettses' damages. In its answer, Maine Bonding denied responsibility for the Tibbettses' claim contending that because the aggregate insurance of the two tortfeasors was in excess of the limits of the Tibbettses' underinsured motorist coverage, Whalon was not underinsured. In the alternative, Maine Bonding contended that if it is required to provide coverage, it is entitled to set off against its policy limit of $300,000 the $300,000 settlement that the Tibbettses received from Guerette.

The Tibbettses sought a summary judgment declaring Whalon to be an underinsured motorist and fixing Maine Bonding's obligation to the Tibbettses at $260,000.[1] The court denied the Tibbettses' motion and, in response to Maine Bonding's motion, granted a summary judgment in favor of Maine Bonding, holding, as a matter of law, that under the terms of its policy Maine Bonding has no obligation to the Tibbettses because of the settlement they received from Guerette. The Tibbettses appeal, contending that the trial court misconstrued the provisions of 24–A M.R.S.A. § 2902(1) and (4) (1990).

The questions before us require that we determine the relationship between the language of the underinsured motorist statute and Maine Bonding's insurance policy provisions. The construction and interpretation of unambiguous insurance policy provisions are questions of law. *Burns v. City of Augusta*, 522 A.2d 361, 362 (Me. 1987). But, when the terms of an insurance policy conflict with mandatory statutory provisions, the statutory provisions must prevail. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 513 A.2d 283, 285 (Me.1986). Thus, the extent of an automobile liability insurer's coverage depends in the first instance on such mandatory statutory provisions as are incorporated into the insurance policy by operation of law and, in the second instance, on the terms of the policy itself. *Government Employees Ins. Co. v. Concord General Mut. Ins. Co.*, 458 A.2d 1205, 1209–10 (Me.1983).

The interpretation of a statute is for the court. *State v. Bellino*, 390 A.2d 1014,

---

1. The Tibbettses also have a negligence action pending against Whalon.

1022 (Me.1978). We have previously stated that

> [t]he 'fundamental rule' in statutory construction is that the legislative intent as divined from the statutory language controls the interpretation of the statute. Unless the statute reveals a contrary intent, the words 'must be given their plain, common and ordinary meaning.' We will not look beyond clear and unambiguous statutory language. To determine legislative intent when there is ambiguity in the statute, [however,] the court may look beyond the words themselves to the history of the statute, the policy behind it, and contemporary related legislation.

*State v. Edward C.*, 531 A.2d 672, 673 (Me.1987) (citations omitted). Consequently, "[i]n construing a legislative enactment, the court will give it such meaning as may best answer the intention which the Legislators had in mind, when they enacted the statute." *Mundy v. Simmons*, 424 A.2d 135, 137 (Me.1980).

■ Maine Bonding argues that because the aggregate liability insurance of both tortfeasors is in excess of its policy covering the Tibbettses, the Whalon vehicle is not underinsured within the purview of 24-A M.R.S.A. § 2902(1), which provides in pertinent part:

> For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's finan-

cial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

A determination of whether Whalon's vehicle is underinsured, however, is governed by whether the amount of liability insurance carried on her vehicle is exceeded by the amount of the underinsured motorist coverage provided to the Tibbettses by the Maine Bonding policy. *See Mullen v. Liberty Mutual Ins. Co.*, 589 A.2d 1275, 1277 (Me.1991); *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me.1983). Whalon's vehicle has liability insurance limits of $20,000 per person and $40,000 per accident. The Tibbettses purchased $300,000 of underinsured motorist liability coverage from Maine Bonding. According to the plain language of the statute, Whalon is underinsured by $260,000.

■ Maine Bonding argues in the alternative that, pursuant to the terms of the reduction clause contained in its policy, it is entitled to offset against its limits of coverage the amount the Tibbettses received in settlement from Guerette and that this offset is specifically authorized by the subrogation rights granted by 24-A M.R.S.A. § 2902(4).[2] We disagree. The dominant purpose of the mandatory uninsured vehicle coverage statute is to provide to the insured victim of an accident a source for the collection of "all sums which the victim is legally entitled to recover as damages against the owner or operator of an uninsured motor vehicle." *Westcott v. Allstate Ins. Co.*, 397 A.2d 156, 169 (Me.1979).[3] In

---

2. 24-A M.R.S.A. § 2902(4) provides:

   In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

3. *Westcott v. Allstate Ins. Co.*, 397 A.2d 156 (Me. 1979), is frequently cited as authority for disallowing policy reduction clauses, however, that case concerned the stacking of two uninsured motorist policies applicable to a plaintiff injured by one uninsured tortfeasor. The instant case

presents us with the novel question of the scope of an insurer's obligation to provide underinsured motorist coverage to its insured for damages caused by two joint tortfeasors, one of whom is fully insured. Our review of case law in other jurisdictions is of little assistance due to differences in both policy terms and statutory provisions. It does reveal, however, a prevailing view that statutorily required underinsured motorist coverage sets a minimum and not a maximum recovery for an injured insured, and therefore, policy provisions purporting to reduce the insurer's liability by amounts received in settlement from third parties are void to the extent that the insured is not fully indemnified. *See Davenport v. AID Ins. Co.*, 334 N.W.2d 711, 713 (Iowa 1983) (listing authorities).

extending the law to require underinsured as well as uninsured motorist coverage, the legislature "intended to permit the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party." *Connolly*, 455 A.2d at 935.

Rather than providing a single source of recovery per accident regardless of the number of tortfeasors, their respective insurance status, or the availability of concurrently applicable insurance coverage for the injured party, the statute specifically mandates coverage that fills the gap left by an underinsured tortfeasor. *See Bazinet v. Concord General Mut. Ins. Co.*, 513 A.2d 279, 281 (Me.1986) ("The liability of insurance carriers is joint and several in cases where there are two or more insurance policies applicable to the same loss.... Thus, an injured passenger can settle with the driver's [UM] insurer ... and then proceed against his own carrier for the remainder of his actual damages."); *Westcott*, 397 A.2d at 166 ("The legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium."). Because a reduction in coverage for amounts received from an insured joint tortfeasor would nullify the statutorily authorized coverage for damages caused by an underinsured motorist, we conclude that to the extent the reduction clause in Maine Bonding's policy contravenes the statute, it is void and without effect. *Westcott* at 169.

Nor does the insurer's right of subrogation, granted pursuant to 24–A M.R.S.A. § 2902(4), authorize a reduction for proceeds received from an insured joint tortfeasor. By its language, the statutory offset pertains to a settlement or recovery from "any person legally responsible for the bodily injury as to which the payment was made." Although joint tortfeasors may be jointly and severally liable for all damages caused by their joint action, the insurer's obligation to indemnify its insured is limited to damages attributable to an underinsured vehicle. *See Smith v. Allstate Ins. Co.*, 483 A.2d 344, 347 (Me.1984). Therefore, the insurer's right of subrogation also applies only to proceeds received from, or on behalf of, the operator of the underinsured vehicle that triggered the insurer's obligation. *See Westcott*, 397 A.2d at 169. *See also Muir v. Hartford Acc. and Indem. Co.*, 522 A.2d 236, 239 (Vt. 1987); *Raitt v. National Grange Mut. Ins. Co.*, 111 N.H. 397, 285 A.2d 799, 802 (1971).

In this case, if Whalon carried the same liability insurance limits as the Tibbettses, the Tibbettses would have $300,000 available to them from Whalon's insurer irrespective of any recovery from Guerette. Because an offset against Maine Bonding's policy limits for the settlement received from Guerette leaves the Tibbettses with less than they could receive if Whalon were equally insured, we hold the clause in Maine Bonding's policy effects a reduction only for amounts recovered from Whalon or her insurer. Accordingly, to the amount of its policy limits, Maine Bonding's contractual obligation to the Tibbettses is determined by the amount of the Tibbettses' damages that are attributable to Whalon,[4] reduced by any recovery received from Whalon or her insurer.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**4.** Should it develop that Whalon's adjudicated liability to the Tibbettses does not exceed Whalon's liability policy limits, Maine Bonding would have no obligation to the Tibbettses. *See* 14 M.R.S.A. § 163 (1980) (mandatory reduction of verdict by amount of previous settlements) and 14 M.R.S.A. § 156 (1980) (comparative negligence of joint tortfeasors).