USCA1 Opinion

 

 [NOT FOR PUBLICATION]
 United States Court of Appeals
 For the First Circuit

No. 97-2327

 DONALD L. AND MARILYN CHAMBERS,

 Plaintiffs, Appellants,

 v.

 MIDDLESEX MUTUAL ASSURANCE COMPANY,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge]

 Before

 Lynch, Circuit Judge,
 Coffin and Bownes, Senior Circuit Judges.
 
 

 Joseph L. Ferris for appellants.
 Julie D. Farr with whom Carl F. Rella was on brief for
appellee.

 

 March 24, 1998

 Per Curiam. After full briefing, oral argument, and
subsequent deliberation, we find ourselves in accord with the
Magistrate Judge's statement of relevant facts, pertinent state
caselaw, basic analysis, and legal conclusions as set forth in his
Memorandum of Decision. We therefore affirm on the basis of that
opinion.
 Our additional comments are directed, first, at
appellants' misreading of Tibbetts v. Maine Bonding and Cas. Co.,
618 A.2d 731 (Me. 1992), as revealed by their brief; we then
elaborate the rationale for allowing appellee to reduce its
underinsured motorist obligation by the amounts paid appellants by
the two underinsured tortfeasors.
 In Tibbetts, where only one of two tortfeasors was
underinsured, the Supreme Judicial Court made two major points: (1)
a determination of underinsurance was governed by whether the
liability insurance on a tortfeasor's vehicle was exceeded by the
victims' underinsured motorist coverage a vehicle specific
analysis; and (2) subrogation rights under 24-A M.R.S.A. 2902(4)
and the offset permitted by the reduction clause in the
underinsured motorist policy were inapplicable to amounts received
from the insured tortfeasors. The court saw the statutory mandate
as that of filling "the gap left by an underinsured tortfeasor" and
the insurer's obligation to indemnify (and its right of
subrogation) as "triggered" only by the damage and payment
attributable to the underinsured vehicle. Id. at 734. The linchpin of appellants' argument rests on what they
view as the "formula enunciated by the Court in Tibbetts." Citing
Tibbetts, 618 A.2d at 734, they state:
 "To the amount of its policy limits, [the
 plaintiff's insurance company's] contractual
 obligation to the [plaintiff] is determined by
 the amount of the [plaintiff's] damages that
 are attributable to [the tortfeasors] reduced
 by any recovery received from [the
 tortfeasor's insurer]."

Appellants' Brief p. 9.
 Again, later in their brief, while conceding that the
amount of damages does not affect the determination whether a
tortfeasor is underinsured, they assert, based on the above
paraphrase: "However, once the determination is made that a
particular tortfeasor is underinsured, Tibbetts holds that the
amount of damages is used to calculate the amount of underinsured
motorist benefits that are due the insured party." Appellants'
Brief p. 14.
 This is unfortunate. At no point does the court make
this statement. What appellants have seized upon is not a
definition of the extent of a victim's underinsured motorist
coverage (or any "contractual obligation"), but a passage dealing
with the statutory right of subrogation in which the court made the
observation we have noted above -- since "the insurer's obligation
to indemnify . . . is limited to damages attributable to an
underinsured vehicle," its right of subrogation also applies only
to proceeds "received from" the triggering vehicle. The point that
subrogation extends only to damages attributable to an underinsured
vehicle and not to an insured one cannot be construed as a "formula"
requiring that Maine courts calculate underinsured motorist
benefits by deducting recoveries from a victim's total damages.
 Another misimpression arises from appellants' efforts to
avoid the application of Middlesex's policy clause allowing a
reduction for amounts paid on behalf of tortfeasors. Appellants
state, "the Court in Tibbetts expressly voided a similar 'reduction
clause.'" But the Tibbetts court was dealing with recovery of
amounts from an insured joint tortfeasor which, if a reduction were
given, "would nullify the statutorily authorized coverage for
damages caused by an uninsured motorist." Id. at 734.
 Coming now to our basic rationale, we focus on the plain
meaning of both the subrogation provision of the underinsured
motorist statute and the corresponding language of appellants'
Middlesex policy.
 The statutory provision reads:
 In the event of payment to any person
 under uninsured vehicle coverage, and subject
 to the terms of such coverage, to the extent
 of such payment the insurer shall be entitled
 to the proceeds of any settlement or recovery
 from any person legally responsible for the
 bodily injury as to which such payment was
 made, and to amounts recoverable from the
 assets of the insolvent insurer of the other
 motor vehicle.

24-A M.R.S.A. 2902(4).

 The relevant policy language reads:

 Any amounts otherwise payable for
 damages under the coverage shall be reduced by
 all sums:

 1. Paid because of the "bodily
 injury" by or on behalf of
 persons or organizations who may
 be legally responsible . . . .

 As appellants point out, the statute "presumes a payment
has been made" by the underinsured motorist insurer. This language
expresses the generic subrogation concept of "substitution of one
person in the place of another with reference to a lawful claim,
demand, or right," Black's Law Dictionary 1595 (4th ed. 1957). In
the classic subrogation situation, Middlesex would first make
payment to appellants of its underinsured policy limit of $100,000. 
Then, stepping into appellants' shoes, it would recover, by suit or
settlement, a total of $70,000 from the two tortfeasors' liability
policies. The result would be a net outlay to the victims of
$30,000 by Middlesex and $70,000 from the tortfeasors. The same
end result is achieved if, as is contemplated by the policy
reduction clause, the victim's underinsurance motorist insurer has
not yet paid the victim, but the victim's recovery is reduced from
an amount "otherwise payable."
 Appellants assert that "Section 2902(4) gives the
underinsured motorist provider a right of action against the
tortfeasors, not a mechanism to reduce the obligation to its
insured." In our view, they are unpersuasive in demonstrating why
a reduction of obligation does not follow from the existence of the
right of action. While appellants assert that, despite giving
"full subrogation rights," the statute "simply does not permit the
stacking of those underlying insurance coverages," it nevertheless 
gives the underinsured motorist carrier entitlement to "the
proceeds of any settlement or recovery from any person legally
responsible." To our mind, "any" in this context includes "all." 
Were the entitlement to be calculated by deducting credit for one
settlement from Middlesex's exposure, then by deducting the second
credit from the original undiminished coverage, Middlesex would be
a victim of having its exposure doubled.
 Had there been only one tortfeasor, with liability
coverage of $70,000, there would be no basis for arguing that
Middlesex should contribute more than $30,000. No reason is
advanced why Middlesex's entitlement to settlement proceeds should
be less in the case of, say, two tortfeasors, each carrying
liability insurance on the amount of $35,000. The gap of
underinsurance remains the same.
 A recent Massachusetts case dealing with an
underinsurance coverage statute similar to Maine's is instructive. 
It declared that a policy's underinsurance coverage was not
available "because the limits of that coverage did not exceed the
sum of the two responsible tortfeasors." Hanover Insurance Co. v.
Pascar, 421 Mass. 442, 443 (1995). The court also commented:
 We note as well that cases from other
 jurisdictions which have considered this issue
 (and which also have construed an insurance
 policy or a statute written in the singular)
 have concluded that the sum of the personal
 injury liability limits of separate policies
 insuring joint tortfeasors should be
 considered for the purpose of deciding whether
 underinsured coverage will be available to an
 injured insured.

Id. at 446 (citations omitted). 
 Affirmed.