Marie J. HUTCHINSON, Admin., Estate of Darcie C. Hutchinson, and Individually, and Carl Hutchinson, Plaintiffs,

v.

FARM FAMILY CASUALTY INS. CO., Defendant.

No. 3:99 cv 2584(DJS).

United States District Court, D. Connecticut.

Aug. 20, 2007.

See also 2000 WL 435443.

Robert I. Reardon, Jr., The Reardon Law Firm, New London, CT, for Plaintiffs.

Steven L. Seligman, Katz & Seligman, Hartford, CT, for Defendant.

### MEMORANDUM OF DECISION

DOMINIC J. SQUATRITO, District Judge.

Pending before the court are defendant Farm Family Casualty Inc. Co.'s ("Farm Family" or "the Defendant") Motion to Vacate the Arbitration Award (dkt.# 16) and plaintiffs Marie J. Hutchinson's and Carl Hutchinson's ("the Plaintiffs") Motion to Reinstate Civil Suit to Docket and for Judgment (dkt.# 17). For the reasons set forth herein, Farm Family's Motion to Vacate the Arbitration Award (**dkt.# 16**) is **DENIED** and the Plaintiffs' Motion to Reinstate Civil Suit to Docket and for Judgment (**dkt.# 17**) is **GRANTED.**

### I. BACKGROUND FACTS

This case arises out of the Defendant's alleged failure to compensate the Plaintiffs for the death of their daughter pursuant to an uninsured motorist policy. On September 13, 1996, the plaintiffs' daughter was killed by an underinsured motorist. It is undisputed that at the time of her death, the decedent was covered by an uninsured motorist policy ("the policy") issued by the Defendant.

On December 9, 1999, the Plaintiffs initiated the above-captioned matter at the State of Connecticut Superior Court within the Judicial District of New London.

They brought a seven count complaint asserting: Underinsured Motorist Claim (First Count); Breach of Contract (Second Count); Bad Faith (Third Count); Connecticut's Unfair Trade Practices Act, Conn. Gen.Stat. §§ 42–110a *et seq.* ("CUTPA") and Connecticut's Unfair Insurance Practices Act, Conn. Gen.Stat. §§ 38a–815 *et seq.* ("CUIPA") (Fourth Count); Reckless and Willful Misconduct (Fifth Count); Reckless and Willful Misconduct under CUTPA/CUIPA (Sixth Count); and Fraud (Seventh Count). Then, on December 30, 1999, Farm Family removed the case to this court. Thereafter, Farm Family moved, pursuant to the policy, to compel arbitration. The policy's arbitration clause reads, "[a] decision agreed to by two of the arbitrators will be binding as to: (1) whether the 'insured' is legally entitled to recover damages; and (2) the amount of damages...." (Dkt.# 18, Ex. 1). On February 29, 2000, this court granted Farm Family's motion to compel arbitration over the Plaintiffs' objection. (*See* dkt. # 14.)

The parties subsequently went to arbitration. During those proceedings, Farm Family submitted to the arbitration panel a "Memorandum of Law Regarding Limitation of Liability Reduction" in which it argued that

(1) The reduction clause is enforceable under Connecticut law and is to be given full force and effect;

(2) The burden is upon the plaintiff to demonstrate that Connecticut law does not apply;

(3) Maine's statutory and common law UM/UIM scheme is similar to Connecticut's so there is no "conflict of law." Under either state's law, the defendant is entitled to the reduction; and

(4) UM/UIM claims are sui generis, and attempts to classify them as sounding in "tort" or "contract" are not useful.

Such claims are "contractual" but pursuant to a "contract" that incorporates "tort" measures of damages. Connecticut's tort law of damages-which is indistinguishable from Maine's—applies; and the reduction clause should be given full force and effect.

(Dkt.# 18, Ex. 4.) This choice of law issue was also addressed during the hearing. (*See id.*, Ex. 2 at 42–53.) According to the Plaintiffs,

[f]our days of hearings were held during which time evidence and argument was presented. Following the hearing, the panel requested and received simultaneous memoranda concerning the issues presented for decision. On December 18, 2006, the panel issued an award finding that the plaintiffs should recover the sum of $200,000 from the defendant.

(*See id.* Pl. Objection to Mot. to Vacate Arbitration Award.)

On December 18, 2006, the arbitration panel issued an "Arbitrators' Decision and Award." (*See* dkt. # 16, Ex. 1.) The decision reads in pertinent part,

In the first count [of the complaint] the plaintiff seeks underinsured motorist benefits from the defendant. The principal issue applicable to that count is what offsets or reductions should be applied to these benefits. The plaintiff claims, *inter alia*, that under Maine law the defendant is not entitled to offset payments made by or on behalf of Robert Milefski ("tortfeasor"). On the other hand, the defendant seeks to reduce its underinsured motorist obligation to the extent of payments made by the tortfeasor's automobile liability carrier and through amounts recovered by way of the execution of his personal assets. In our opinion, a resolution of these contentions is critical to resolving the parties' dispute.

To that end, we find that the law of Maine controls. We further find that the announced purpose of that state's underinsured motorist legislation is to place the claimant-insured in the same position of receiving full damages as if the underinsured motorist carried the same limit. We find the underpinning of this conclusion in the Maine case law, specifically, that court's view of underinsured motorist coverage as being "intended to permit the injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party." *Tibbetts v. Maine Bonding and Casualty Co.*, 618 A.2d 731, 734 (1992); *Wescott v. Allstate Insurance*, 397 A.2d 156, 167 (1979). Thus, had the tortfeasor been insured with liability coverage in the amount of $250,000.00, the plaintiff-insured would have been entitled to recover that amount plus the value of the tortfeasor's assets.

The defendant in seeking to reduce its liability relies upon the language of the policy which provides:

PART C–UNINSURED MOTORISTS COVERAGE

LIMIT OF LIABILITY

B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.

Our interpretation of Maine law is that such policy provisions are void to the extent that the insured is not fully indemnified. *Tibbetts, supra* at 734, fn. 3. Underinsured motorist coverage is by the Maine court's description "gap" coverage, signifying that it affords the difference between the full underinsured motorist limit and the underinsured mo-

torist's coverage. *Id.* The parties have stipulated that the damages suffered by the plaintiff are in excess of $250,000.00 and we find that the damages suffered by the plaintiff exceed that amount as well as the amount realized from the tortfeasor's personal assets. Thus, the "gap" here is $200,000.00 arrived at after deducting the payment by the tortfeasor's liability insurer and the plaintiff's coverage of $250,000.00

(Dkt.# 16, Ex. 1.) Then, on December 29, 2006, the arbitrators supplemented their decision by issuing a "Memorandum of Decision and Supplemental Decision" ("the Supplemental Decision"). (*See id.,* Ex. 2.) In the Supplemental Decision, the arbitrators found that the value of the property recovered by the plaintiff from the personal assets of the underinsured motorist was $163,189.22. (*See id.*)

## II. ANALYSIS

Farm Family argues that the arbitrators exceeded their power when they concluded that the law of Maine controlled the resolution of the issues in the case and that under Maine law, a certain offset/reduction clause of the Defendant's insurance policy was void. The Plaintiffs argue that the arbitration panel did not exceed its authority and that the arbitration clause governs all disputed issues embodied in the Plaintiffs' seven count complaint, including their claim for uninsured motorist benefits. The Plaintiffs further argue that Farm Family submitted the choice of law issue to the arbitration panel.

 "Because 'arbitration orders are not self-executing,'" they are executed via judicial review and the issuance of a court order. *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir.2006) (citing *Hoeft v. MVL Group, Inc.,* 343 F.3d 57, 63 (2d Cir.2003)). A court reviewing the arbitration order "can confirm and/or vacate the award, either in whole or in part." *D.H. Blair,* 462 F.3d at 104. In this Circuit, "[i]t is well established that courts must grant an arbitration panel's decision great deference. A party petitioning a federal court to vacate an arbitration award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir.2003). Section 10(a) of the Federal Arbitration Act, codified at 9 U.S.C. § 1 *et seq.,* ("FAA") authorizes a district court to vacate an arbitration award on only four specific and limited grounds:

(1) where the award was procured by corruption, fraud, or under means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, the Second Circuit has long recognized an additional ground for vacatur not set forth in the FAA: namely, manifest disregard of law. *See, e.g., Duferco,* 333 F.3d at 388 (2d Cir.2003); *Goldman v. Architectural Iron. Co.,* 306 F.3d 1214, 1216 (2d Cir.2002); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 208 (2d Cir.2002). Here, defendant Farm Family moves to vacate the arbitration award on only one

ground—that "the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (Dkt.# 16.) Because Farm Family only seeks vacatur pursuant to Section 10(a)(4), the Court need not address the other grounds for vacatur.

## 1. Farm Family's Argument that the Arbitrators' Exceeded their Power by Concluding that the Law of Maine Controls

■ Farm Family argues that this court should vacate the arbitration award because the arbitrators exceeded their authority when they concluded, *inter alia,* that the law of Maine controlled the resolution of the damages issue. The FAA's authorization to vacate an arbitration award under § 10(a)(4) is " 'consistently accorded the narrowest of readings ... especially where that language has been invoked in the context of arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance.' " *Westerbeke,* 304 F.3d at 220 (2d Cir.2002) (quoting *In re Andros,* 579 F.2d 691, 703 (2d Cir.1978)). Indeed, the "inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 824 (2d Cir.1997), *cert denied,* 522 U.S. 1049, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998); *see also In re Fahnestock,* 935 F.2d 512, 515 (2d Cir.1991) ("[W]e have recognized that if arbitrators rule on issues not presented to them by the parties, they have exceeded their authority and the award must be vacated." (internal quotation marks omitted)). Here, the record before the court conclu-

sively reveals that the arbitrators ruled on an issue presented to them by the parties.

■ First, the court observes that it was Farm Family who moved, pursuant to Hutchinson's Underinsured Motorist Policy, to compel arbitration. The arbitration clause reads, "[a] decision agreed to by two of the arbitrators will be binding as to: (1) Whether the 'insured' is legally entitled to recover damages; and (2) the amount of damages ..." (Dkt.# 18, Ex. 1). Indeed, Farm Family argued that its motion to compel arbitration should be granted because "the Plaintiff and the Defendant disagree regarding whether the Plaintiffs are legally entitled to recover damages under the Uninsured Motorist Coverage and, if so, the amount of damages to which they are entitled." (Dkt.# 5, ¶ 6.) Second, the court finds that during the arbitration proceedings, Farm Family addressed the conflict of law issue regarding whether the uninsured motorist benefit should be offset. For instance, Farm Family, in its "Memorandum of Law Regarding Limitation of Liability Reduction," argued that

(1) The reduction clause is enforceable under Connecticut law and is to be given full force and effect;

(2) The burden is upon the plaintiff to demonstrate that Connecticut law does not apply;

(3) Maine's statutory and common law UM/UIM scheme is similar to Connecticut's so there is no "conflict of law." Under either state's law, the defendant is entitled to the reduction; and

(4) UM/UIM claims are sui generis, and attempts to classify them as sounding in "tort" or "contract" are not useful. Such claims are "contractual" but pursuant to a "contract" that incorporates "tort" measures of damages. Connecticut's tort law of damages—which is indistinguishable from Maine's-applies;

and the reduction clause should be given full force and effect.

(Dkt.# 18, Ex. 4.) This choice of law issue was also addressed by the arbitrators and counsel during the hearing. (*See id.*, Ex. 2 at 42–53.) In light of the foregoing, the court finds that the parties expected the arbitration panel to rule on the choice of law issue because it was presented to the panel during the preliminary discussions and it was fully briefed by both parties. Thus, the arbitrators did not exceed their authority by ruling on an issue that was not presented to them.

Accordingly, to the extent Farm Family argues that the court should vacate the arbitration award because the arbitrators exceeded their power when they concluded that the law of Maine controlled the resolution of the issues of in this case, its motion to vacate is **DENIED**.

2. **Farm Family's Argument that the Arbitrators Exceeded their Authority by Concluding that, under Maine Law, a Certain Offset/Reduction Clause of Farm Family's Insurance Policy is Void**

■ Farm Family next argues that the arbitrators exceeded their authority when they concluded, that pursuant to the law of Maine, the offset/reduction clause of Farm Family's insurance policy was void. As previously discussed, the "inquiry under § 10(a)(4) [of the FAA] ... focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *DiRussa*, 121 F.3d at 824 (2d Cir.1997), *cert denied*, 522 U.S. 1049, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998). Here, the court observes that Farm Family, in its "Reply Memorandum re: Issues of Law & Fact," argued that "Plaintiff's quotations of dicta from Maine cases do not establish that the limitation of liability clause (which Farm Family invokes to obtain a credit for the value of Milefski's property) [is] void under Maine law." (Dkt.# 18, Ex. 5.) Based on this representation the court finds that the arbitrators decided an issue that the parties submitted to it. Thus, they did not exceed their authority.

■ Moreover, to the extent Farm Family argues that the arbitrators misapplied Maine's law, their claim fails because "[a]n [arbitration] award may not be vacated under section 10 [of the FAA] on the grounds that the arbitrator failed to interpret correctly the law applicable to the issues in dispute or misinterpreted the underlying contract." *Concourse Beauty Sch. v. Polakov*, 685 F.Supp. 1311, 1317 (S.D.N.Y.1988). Accordingly, to the extent Farm Family argues that the court should vacate the arbitration award because the arbitrators exceeded their power when they concluded that, pursuant to the law of Maine, the offset/reduction clause of Farm Family's insurance policy is void, its motion to vacate is **DENIED**.

## III. CONCLUSION

For the foregoing reasons, Farm Family's Motion to Vacate Arbitration Award **(dkt.# 16)** is **DENIED** and the Plaintiffs' Motion to Reinstate Civil Suit to Docket and for Judgment **(dkt.# 17)** is **GRANTED**. Accordingly, **the Clerk of the Court shall reinstate this case to the docket and enter judgment for the Plaintiffs in accordance with the Arbitration Award (*see* dkt. # 17, Ex. A) and Supplemental Decision (*see id.*). Thus, the Plaintiff shall recover the sum of $200,000.00 from the Defendant without costs or interest.**

**IT IS SO ORDERED.**