1999 ME 178

**Robert BOURQUE**

v.

**DAIRYLAND INSURANCE COMPANY et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 14, 1999.

Decided Dec. 3, 1999.

Paul F. Macri, Tyler N. Kolle, Berman & Simmons, P.A., Lewiston, for plaintiff.

Martica S. Douglas, Douglas, Denham, Rodgers & Hood, (for Metropolitan Prop. & Casualty), Richard N. Hewes (for Dairyland Ins. Co.), Christopher C. Dinan, Monaghan Leahy Hochadel & Libby, Portland, (for Progressive Ins. & Casualty), for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Robert Bourque appeals from summary judgments entered in the Superior Court (York County, *Perkins, A.R.J.*), against him and in favor of Dairyland Insurance Company and Metropolitan Property & Casualty Insurance Company, in an action brought following an automobile accident. Bourque seeks to recover additional compensation for his injuries under policies issued by each company. Bourque contends that there are genuine issues of material fact and that the court erred in granting summary judgments in favor of Metropolitan and Dairyland. Finding no error, we affirm the judgments.

[¶ 2] The facts are largely undisputed. On March 14, 1994, Robert Bourque was a passenger in a vehicle driven by Bryan Hamel when it was involved in a serious accident. Hamel was killed and Bourque was severely injured. On July 18, 1997, Bourque entered into a settlement agreement with Hamel's insurance provider, Dairyland Insurance Company, for a total of $25,000, the "per person" liability limit of Hamel's policy. The agreement expressly excepted "any claims for uninsured or underinsured motorist coverage."

[¶ 3] At the time of the accident, Bourque was living with his mother and stepfather, Carlene and Donald Hartford. Bourque was virtually the sole driver of a 1976 Chevrolet van and owned no other

vehicle during the policy period in question. According to Donald Hartford's affidavit, the van was purchased by Hartford without any funds from Bourque, and later sold by Hartford to a third party with none of the proceeds going to Bourque. The vehicle, however, was registered and insured in Bourque's name. Bourque was the named insured in an insurance policy issued by Progressive Insurance and Casualty Company with an underinsured motorist limit of $25,000. He also registered the vehicle with the Maine Department of Motor Vehicles.

[¶ 4] In addition to the Progressive policy, two other insurance policies are at issue in this case. Carlene and Donald Hartford were the named insureds under a policy issued by Metropolitan, with an underinsured motorist limit of $100,000. The Metropolitan policy covers **bodily injury damages** caused by an accident arising out of the ... use of an **underinsured highway vehicle** which **you** or a **relative** are legally entitled to collect from the owner or driver of an **underinsured highway vehicle.**" The policy excludes from the definition of relative "any **person** ... who owns a **private passenger vehicle.**" Donald Hartford, in his application for insurance coverage with Metropolitan, indicated that Bourque has "his own car ins[urance] policy and is not a driver [of] insured's autos."

[¶ 5] Hamel's policy, issued by Dairyland and under which Bourque collected the $25,000 liability limit, also contained a $25,000 underinsured motorist policy limit. The Dairyland policy provides that Dairyland will "pay damages ... the owner of an uninsured *motor vehicle* is legally obligated to pay because of bodily injury *you* suffer in a *car accident* while *occupying* a

car ... as a result of having been struck by an uninsured *motor vehicle.*" It further provides that "[a] *car* we insure ... isn't an uninsured *motor vehicle.*"

[¶ 6] On March 13, 1998, Bourque filed the present claim against Metropolitan, Dairyland, and Progressive to recover under the underinsured provisions of the policies. Following discovery, the court granted motions for summary judgment filed by Metropolitan and Dairyland. Progressive then filed its motion for summary judgment, which was granted on the condition that the judgment would become void if we were to vacate either judgment with respect to Metropolitan or Dairyland. This appeal by Bourque followed.

[¶ 7] "When reviewing a grant of summary judgment, we view the evidence in the light most favorable to the party against whom the judgment has been granted, and review the trial court's decision for an error of law." *Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me. 1992).

## A.  METROPOLITAN'S EXCLUSION

[¶ 8] The issue presented as to the Metropolitan policy is whether, on what are basically uncontested facts, Bourque is the "owner" of the van under the Metropolitan policy, thus triggering the exclusion of Bourque as an owner of a private passenger vehicle from the policy's definition of relative. Bourque contends that he has raised a "genuine issue of material fact" by sufficiently alleging that his stepfather, rather than Bourque himself, was the true owner of the van.[1] Metropolitan contends that the fact that Bourque registered and obtained insurance for the van is proof that he was the "owner" of the vehicle.

---

1.  Bourque points out that we have not found that ownership of a vehicle vests solely with the person who registers it. In *Iles v. Palermino,* 127 Me. 226, 142 A. 867 (1928), we noted that ownership was vested in two parties even though the vehicle was registered in the name of only one party. *Id.* at 226, 142 A. at 867. That case, however, did not involve

the construction of "owner" as used in an insurance contract. In *Iles,* the question was whether the driver of a vehicle, jointly owned by the defendant and the husband of the driver, but registered in the name of defendant alone, was a "servant or agent" of the defendant for purposes of vicarious liability. *See id.*

[¶ 9] The term "owner" is not separately defined in Metropolitan's policy. Whether or not a contractual term is ambiguous is a question of law. *See Tondreau v. Sherwin–Williams Co.*, 638 A.2d 728, 730 (Me.1994). Contract language is considered ambiguous if it is reasonably possible to give that language at least two different meanings. *See Cambridge Mut. Fire Ins. Co. v. Vallee*, 687 A.2d 956, 957 (Me.1996).

[¶ 10] The term "owner" as used in Metropolitan's policy is unambiguous, and on the undisputed facts, Bourque was the owner of the van. Bourque registered the van in his name. He insured the van in his name. In his insurance application, Hartford represented to Metropolitan that Bourque had his own car insurance policy, and that Bourque would not be driving vehicles insured by Metropolitan. On these facts, it was clearly the intention of the parties that Bourque be considered the owner of the van, and that he would not be covered under the Metropolitan policy. Accordingly, the Superior Court correctly determined that Metropolitan was entitled to a summary judgment.

## B. DAIRYLAND'S SETOFF PROVISION

[¶ 11] Bourque contends that the provision of the Dairyland policy excluding from the definition of an uninsured motor vehicle any car that Dairyland insures is void because it conflicts with 24–A M.R.S.A. § 2902 (1990 & Supp.1998).[2] He contends that he should be able to "stack" uninsured motorist coverage on top of the liability coverage under which he has already recovered.[3] Dairyland points out

2. The statute provides:
1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.
2. The amount of coverage to be so provided may not be less than the minimum limits for bodily injury liability insurance provided for under Title 29–A, section 1605, subsection 1.
3. For the purposes of this section, the term "uninsured motor vehicle" shall be deemed also to include, subject to the terms and conditions of such coverage, an insured other motor vehicle where:

A. The liability insurer of such other motor vehicle is unable because of its insolvency to make payment with respect to the legal liability of its insured within the limits specified in its policy; and
B. The occurrence out of which such legal liability arose took place while the uninsured vehicle coverage required under subsection 1, above, was in effect; and
C. Written notice of such occurrence shall have been given to the insurer within 2 years thereof.
Nothing contained in this subsection shall be deemed to prevent any insurer from providing insolvency protection to its insureds under more favorable terms.
4. In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.
24 M.R.S.A. § 2902.

3. Bourque relies on *Tibbetts v. Maine Bonding & Cas., Co.*, 618 A.2d 731 (Me.1992), in which we held that Maine Bonding's setoff provision was invalid. Besides the obvious difference between that case and the present one—that Bourque seeks recovery under the liability and uninsured motorist provisions of the

that the language of its policy stating that "[a] car we insure ... isn't an uninsured motor vehicle" is clear and is dispositive.

[¶ 12] We have addressed this issue previously. In *Smith v. Allstate Insurance Co.*, 483 A.2d 344 (Me.1984), we relied on virtually identical policy language to find that such an exclusion was valid and prevented the insured from recovering under an uninsured motorist provision. *Id.* at 347 (citing *Turcotte v. Foremost Ins. Co.*, 460 A.2d 1369, 1370 (Me.1983)). Accordingly, Bourque may not simultaneous-

ly recover under both provisions of the Dairyland policy and judgment was properly entered in favor of Dairyland.

The entry is:

Judgments affirmed.

---

*same plan*—*Tibbetts* is inapposite because in that case there were two joint tortfeasors.

*See id.* at 733–34.