2008 ME 46

**Cynthia MOLLEUR**

**v.**

**DAIRYLAND INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued: Nov. 7, 2007.

Decided: March 11, 2008.

Stephen C. Whiting, Esq. (orally), The Whiting Law Firm, Portland, ME, for Cynthia Molleur.

Christine Kennedy–Jensen, Esq., James E. Fortin, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, ME, for Dairyland Insurance Co.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] Cynthia Molleur appeals from a summary judgment entered by the Superior Court (York County, *Brennan, J.*) in favor of Dairyland Insurance Company. Molleur argues that the Superior Court erred in granting summary judgment and in denying her motion for partial summary judgment because the offset provision of an insurance policy under which she was insured, operating to offset any underinsured motorist payments by the amount paid out under the liability coverage of the same policy, is contrary to the public policy stated in 24–A M.R.S. § 2902 (2007).[1] We agree and vacate the decision of the Superior Court.

## I. BACKGROUND

[¶ 2] Cynthia Molleur was injured in a motorcycle accident while riding as a passenger on her then-husband Barry Hough's 1991 Honda Gold Wing. The accident occurred on the evening of July 3, 1999, on Interstate 80 in Pennsylvania and involved two other drivers: Patricia Farley and Terry Dressier.

[¶ 3] Farley struck a deer while driving, stopped, and left her car parked in the traffic lanes. Dressier came upon Farley's vehicle and stopped behind her, leaving his vehicle in the left hand traffic lane. When Hough and Molleur came upon the stopped vehicles, Hough tried to avoid them but lost control of the motorcycle and crashed, injuring Molleur.

[¶ 4] Molleur has recovered a total of $98,000 as a result of the accident. She recovered $15,000 from Farley, the maximum under Farley's liability policy, and $3000 from Dressier, paid by Dressler's liability insurer. Lastly, as Molleur was insured under Hough's Dairyland policy, she received $80,000 from Dairyland on his liability policy. Molleur and Dairyland executed a settlement agreement and general release that specifically exempted release of any claim brought under Hough's Dairyland uninsured/underinsured motorist (UM/UIM) provision.

[¶ 5] Molleur then filed the instant action against Dairyland for payment under Hough's Dairyland UM/UIM provision. This policy provides for $50,000/$100,000 (per person/per accident) of UM/UIM coverage. Molleur seeks $35,000 under this policy; that is, payment of the $50,000 policy limit offset by the $15,000 previously recovered from Farley.[2]

[¶ 6] As an affirmative defense, Dairyland argues that it was entitled to the

---

1. Title 24–A M.R.S. § 2902(1) was amended after the 1999 accident. P.L. 2005, ch. 591, § 1 (effective date August 23, 2006). Because the relevant language of the current statute is substantially similar to that prior to the amendment, 24–A M.R.S.A. § 2902(1) (2000), we cite to the current version throughout.

2. It does not appear that Dairyland disputes that Farley was underinsured. Farley had a liability policy with a limit of $15,000. Since this is less than the $50,000 per person minimum liability coverage required by 29–A M.R.S. § 1605(1)(C)(2) (2007), and less than the coverage provided by Hough's UM/UIM policy, Farley was "underinsured." 24–A M.R.S. § 2902(1) (2007).

benefit of the offset provision in the policy. This clause provides:

> The amount of *damages* payable under this insurance will be reduced by the amount paid by or on behalf of anyone responsible for *your* injury. This includes any amount paid under the liability insurance of this policy and any amount paid or payable under any workers' compensation law, disability benefits law or any similar law—exclusive of any state non-occupational disability law.

On this basis, Dairyland argues it is entitled to offset the $80,000 already paid on Hough's liability coverage against payment sought on the UM/UIM claim and therefore is not liable to Molleur.

 [¶ 7] The Superior Court granted Dairyland's motion for summary judgment, finding that based on *Bourque v. Dairyland Insurance Co.*, 1999 ME 178, 741 A.2d 50, Molleur could not recover under both the liability coverage and the UM/UIM coverage of the same policy. Molleur filed a timely appeal and has dem-

onstrated that she has standing to pursue this claim.[3]

## II. DISCUSSION

 [¶ 8] A grant of a summary judgment is reviewed de novo for errors of law, with the evidence viewed in the light most favorable to the party against whom summary judgment was entered. *Day v. Allstate Ins. Co.*, 1998 ME 278, ¶ 4, 721 A.2d 983, 984. If we determine that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law," then the grant of summary judgment will be upheld. *Reliance Nat'l Indem. v. Knowles Indus. Serv., Corp.*, 2005 ME 29, ¶ 7, 868 A.2d 220, 224.

[¶ 9] The Legislature requires that any motor vehicle policy written in Maine provide UM/UIM coverage. 24-A M.R.S. § 2902. The statute defines "underinsured motor vehicle" as "a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided

---

3. This matter is distinguishable from *Jipson v. Liberty Mutual Fire Insurance Co.*, 2007 ME 10, 912 A.2d 1250, where we dismissed a facially similar appeal. *Jipson* concerned a dispute between an insured driver and his insurer regarding whether a previous recovery could be offset against payment on the insured's UM/UIM policy. *Id.* ¶ 2, 912 A.2d at 1251. Following a ruling for the defendant on its motion for summary judgment, the parties filed a motion to dismiss with prejudice and the plaintiff appealed. *Id.* ¶ 4, 912 A.2d at 1251. On appeal, we found that there was no evidence that the plaintiff had standing, as the undisputed facts did not contain evidence that would support a finding that the plaintiff's damages exceeded the amount he had already recovered, and the plaintiff had agreed to a dismissal. *Id.* ¶¶ 5–6, 912 A.2d at 1251–52.

In Maine, standing is prudentially based, rather than constitutionally based. *Roop v. City of Belfast*, 2007 ME 32, ¶ 7, 915 A.2d 966, 968. Standing is concerned with limit-

ing access to the courts to those parties best able to assert a claim—to parties with a real, rather than hypothetical, interest.

Here, the evidence establishes that Molleur has standing. Molleur has sharply defined the issues in the case and has presented evidence that her interest in the claim is real. Molleur has filed a sworn affidavit claiming damages in excess of her recovery to date; Dairyland has admitted, for the purpose of the underlying summary judgment motion, that Molleur's injuries may have exceeded her recovery to date; and here the parties did not file a motion to dismiss.

Based on these facts, there is sufficient evidence to find that Molleur has presented a justiciable controversy. To require a further factual establishment of a specific dollar amount of her damages, especially at this stage in the proceedings, would needlessly consume judicial resources, deter potential settlement, and prevent potentially valid claims from being heard.

for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage." 24–A M.R.S. § 2902; *see also Tibbetts v. Me. Bonding & Cas. Co.,* 618 A.2d 731, 733 (Me.1992).

[¶ 10] The purpose of the statute is to permit an injured party to receive the same recovery as would have been available to him or her had the tortfeasor carried an equivalent level of insurance. *See Day,* 1998 ME 278, ¶ 5, 721 A.2d at 985; *Connolly v. Royal Globe Ins. Co.,* 455 A.2d 932, 935 (Me.1983); *see also Wescott v. Allstate Ins.,* 397 A.2d 156, 169–70 (Me. 1979). This purpose is effected by interpreting the statute liberally in favor of insured individuals and by strictly interpreting it against insurers. *Greenvall v. Me. Mut. Fire Ins. Co.,* 1998 ME 204, ¶ 7, 715 A.2d 949, 952. Any ambiguity in "legally entitled to recover," the operative language in section 2902, is to be resolved in favor of injured insureds. *Id.*

[¶ 11] A contract for insurance necessarily incorporates all relevant mandatory statutory provisions. *Wescott,* 397 A.2d at 166. Thus, if a contract provision is contrary to a mandatory statutory provision, it is void and unenforceable. *Id.* The UM/UIM statute, as described above, provides for a minimum recovery and does not set, as it could have, a maximum recovery. *Id.* at 170. The Legislature could have, but has *not*, limited recovery to payment under a single policy and expressly prohibited stacking. *Id.* Indeed, the statutory language requires a comparison of the coverage for each individual tortfeasor's vehicle with the policy amount held by the injured party:

The coverage required by this section may be referred to as "uninsured vehicle coverage." *For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.*

24–A M.R.S. § 2902(1) (emphasis added). Since the statute requires that each policy must supply the required minimum underinsured vehicle coverage, an offset provision that limits that coverage is contrary to statute and therefore void and unenforceable.[4] *Wescott,* 397 A.2d at 166.

[¶ 12] Our conclusions in *Wescott* and *Tibbetts* provide additional guidance here. In these cases, defendant insurance companies unsuccessfully argued that a prior recovery should be offset against recovery under the UM/UIM provisions of the relevant insurance contracts. The insurance contracts in each case had such offset provisions. *Tibbetts,* 618 A.2d at 732; *Wescott,* 397 A.2d at 165 n. 7.

[¶ 13] We held that this argument was not persuasive in those cases as it was, and is, contrary to section 2902. "Because a reduction in coverage for amounts received from an insured joint tortfeasor would nullify the statutorily authorized coverage for damages caused by an underinsured motorist," the offset provision was void as contrary to statute. *Tibbetts,* 618 A.2d at 734; *see also Wescott,* 397 A.2d at 170 (holding that a recovery in excess of UM/

---

4. This provision, which creates an impermissible offset of UM/UIM coverage, is qualitatively different from an exclusion that defines a vehicle insured by the insurer, under the same policy, as not "uninsured" for UM/UIM purposes; such an exclusion is permissible under Maine law. *See Bourque v. Dairyland Ins. Co.,* 1999 ME 178, ¶ 12, 741 A.2d at 50, 54.

UIM coverage limits is not inconsistent with the stated goal of section 2902).

[¶ 14] Again, the protections of section 2902 are to be interpreted liberally in favor of insureds and narrowly against insurers. *See, e.g., Greenvall*, 1998 ME 204, ¶ 7, 715 A.2d at 952. Thus, any doubts regarding whether an insured is "legally entitled to recover" under a policy should be resolved in favor of the insured.

[¶ 15] Viewed in this light, it is evident that Dairyland's reliance on *Bourque* is misplaced. There, a policy exclusion defining any car insured by the defendant insurance company as not an uninsured motor vehicle prevented the plaintiff's recovery under the UM/UIM portion of the driver's policy after the plaintiff had already recovered under the liability portion of the same contract. *Bourque*, 1999 ME 178, ¶¶ 5, 11–12, 741 A.2d at 52–54. Such an exclusion is valid and enforceable. *Id.* ¶ 12, 741 A.2d at 54 (*citing Smith v. Allstate Ins. Co.*, 483 A.2d 344 (Me.1984)). We specifically distinguished *Tibbetts* as inapplicable on those facts because *Bourque* involved a single policy and a single tortfeasor, rather than the two policies and two tortfeasors present in *Tibbetts*. *Id.* ¶ 11 n. 3, 741 A.2d at 53–54.

[¶ 16] While *Bourque* appears to be superficially similar to the facts surrounding Molleur's claim—a plaintiff attempts to recover under both the liability and UM/UIM provisions of the same policy—a critical difference exists: Molleur is suing Hough's insurer Dairyland for payment under the UM/UIM policy for negligence by a *second* tortfeasor, Farley, not for Hough's negligence. To allow Dairyland to avoid its duty to provide uninsured motorist coverage for third party drivers simply by invoking payments made on behalf of its principal insured would eviscerate the protections of 24–A M.R.S. § 2902.

[¶ 17] Our longstanding rule controls: the availability of uninsured coverage is determined by comparing the injured party's UM/UIM coverage with the liability coverage available under the tortfeasor's policy. 24–A M.R.S. § 2902; *Tibbetts*, 618 A.2d at 733; *Connolly*, 455 A.2d at 935. The fact that the insurer may have made liability coverage payments reflecting the principal insured's exposure does not relieve it from its statutory obligation to provide UM coverage for other tortfeasors under the same policy.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.