SILVER, J„
with whom ALEXANDER and JABAR, JJ., join, dissenting.
[¶ 45] I respectfully dissent. The Court’s holding is at odds with our rules of statutory construction and the very pur *634 pose of the uninsured motorist statute. For the reasons below, I would conclude that section 2902 unambiguously applies to an umbrella policy that is linked to a primary automobile policy.
[¶ 46] “The purpose of the [uninsured motorist] statute is to permit an injured party to receive the same recovery as would have been available to him or her had the tortfeasor carried an equivalent level of insurance.” Molleur v. Dairyland Ins. Co., 2008 ME 46, ¶ 10, 942 A.2d 1197; see Wescott v. Allstate Ins., 397 A.2d 156, 166 (Me.1979) (“The legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium”). “By enacting section 2902, the Legislature has ... indicated a strong public policy in favor of the just compensation of accident victims.” Beal v. Allstate Ins. Co., 2010 ME 20, ¶ 34, 989 A.2d 733 (quotation marks omitted); see Pease v. State Farm Mut. Auto. Ins. Co., 2007 ME 134, ¶16, 931 A.2d 1072 (noting “the legislative intent to close coverage gaps rather than endorse patchwork policies that leave responsible, insured consumers without the protection they have paid for” (Silver, J., concurring)).
[¶ 47] As a general rule of statutory interpretation, “[w]e seek to discern from the plain language of the statute the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical. If the statutory language is clear and unambiguous, we construe the statute in accordance with its plain meaning in the context of the whole statutory scheme.” State v. Mourino, 2014 ME 131, ¶8, 104 A.3d 893 (quotation marks omitted). Given its broad intent to “benefit all insured motorists,” Wescott, 397 A.2d at 166, we employ an additional rule of construction when interpreting the uninsured motorist statute. In order to properly “effectuate the purposes of this remedial statute, we construe the protections of section 2902 liberally in favor of insureds and strictly against insurers.” Beal, 2010 ME 20, ¶ 34, 989 A.2d 733; see Molleur, 2008 ME 46, ¶ 10, 942 A.2d 1197 (“This purpose is effected by interpreting the statute liberally in favor of insured individuals and by strictly interpreting it against insurers.”). Only if a statute is ambiguous do we consider its legislative history. Strout v. Cent. Me. Med. Ctr., 2014 ME 77, ¶ 10, 94 A.3d 786.
[¶ 48] Against that backdrop, we must determine whether section 2902(1), which applies to all “policies] insuring against liability arising out of the ownership, maintenance or use of any motor vehicle ... with respect to any such vehicle registered or principally garaged in this State,” 24-A M.R.S. § 2902(1) (2014), applies to an umbrella policy that provides coverage in excess of the limits of a primary automobile policy. The Supreme Court of Vermont addressed this very question in 2009.[9] It *635 concluded that “[i]n providing clearly and unambiguously that ‘[n]o policy’ insuring ‘against liability arising out of the ownership, maintenance or use of any motor vehicle’ may issue without [uninsured and underinsured motorist] coverage, the statute plainly encompasses the excess policies here at issue.” Ins. Co. of State of Pennsylvania v. Johnson, 186 Vt. 435, 987 A.2d 276, 279 (2009) (second alteration in original). Like the language of the provision at issue in Johnson, the plain language of section 2902 does not discriminate between primary motor vehicle insurance policies and umbrella policies. See id. at 280 (“It is a substantial stretch ... to conclude that [the] reference to policies ‘insuring against liability arising out of the ownership, maintenance or use of any motor vehicle’ must, therefore, have also been intended to refer solely to primary automobile policies.”).
[¶ 49] Section 2902(1) is based on the nature of the coverage, not the type of insurance policy. See id. at 282. An umbrella policy will fall within the scope of section 2902 if it provides coverage for liability that “aris[es] out of the ownership, maintenance or use of any motor vehicle.” The umbrella policy does so here — in its schedule of minimum primary insurance requirements, the policy refers to “Auto Liability Insurance (including Uninsured/Underinsured Motorist Coverages Where Required By Law) For Autos You Own, Lease, or Use Regularly.” Read plainly, and in light of our mandate to construe section 2902 “liberally in favor of insureds and strictly against insurers,” the statute applies to the umbrella policy. Beal, 2010 ME 20, ¶34, 989 A.2d 733.
[¶ 50] The Court points out that “[s]eetion 2902 applies only to policies insuring specific vehicles registered or principally garaged in Maine,” and notes that Dickau’s umbrella policy does not refer to a particular vehicle. Court’s Opinion ¶ 33-34. But the statute’s application to policies “insuring specific vehicles” does not exclude Dickau’s umbrella policy from its requirements, for two reasons. First, uninsured motorist coverage, “[u]nlike liability coverage, ... inures to the person, not the vehicle.” Pease, 2007 ME 134, ¶ 15, 931 A.2d 1072 (Silver, J., concurring) (quotation marks omitted); see Johnson, 987 A.2d at 280-81 (“Of course, uninsured motorist coverage, much like the excess or umbrella policies here at issue, is designed for the protection of persons, not vehicles.” (quotation marks omitted)). Because section 2902 requires coverage that inures to a person and not the specific covered vehicle, that the umbrella policy does not refer to a specific covered vehicle does not bring it outside of the Legislature’s intent to require coverage.
[¶ 51] Second, the umbrella policy does insure Dickau’s specific vehicle. By their very nature, umbrella policies are “generally conditioned on the existence of one or more primary coverages.” Johnson, 987 A.2d at 281 (quotation marks omitted). Dickau’s insurance policy required an underlying motor vehicle insurance policy before it would provide coverage. That underlying motor vehicle policy provides coverage “with respect to” Dickau’s vehicle. Therefore, the umbrella policy provides coverage “with respect to” that vehicle. See, e.g., Rebernick v. Wausau Gen. Ins. Co., 289 Wis.2d 324, 711 N.W.2d 621, 626 (2006) (“The terms of the [umbrella] policy require, as a condition of insurance, that there be underlying automobile insurance coverage in a specified amount. The underlying primary automobile policy, in turn, refers to a particular motor vehicle. Thus, the ... umbrella policy insures ‘with respect’ to a particular motor vehicle *636 that is named or described in the policy by incorporation of the underlying policy.”).
[¶ 52] The Court turns our rule of construction on its head by interpreting section 2902 liberally in favor of insurance carriers and strictly against insured motorists. See Wescott, 397 A.2d at 169 (noting that “this remedial statute must be construed liberally in favor of the insured victim and strictly against the insurer”). In emphasizing that we must not read a statute literally if it “thwarts the clear legislative objective,” Doe v. Reg’l Sch. Unit 26, 2014 ME 11, ¶ 15, 86 A.3d 600 (quotation marks omitted), the Court implies that reading the uninsured motorist statute so as to encompass umbrella policies would be “inimical to the public interest” and “wreak[ ] havoc” on the intent of the Legislature. See Court’s Opinion ¶¶ 21, 23. In order to reach this conclusion, however, the Court ignores the very purpose of section 2902, which is to benefit all insured motorists by “permitting] an injured party to receive the same recovery as would have been available to him or her had the tortfeasor carried an equivalent level of insurance.” Molleur, 2008 ME 46, ¶ 10, 942 A.2d 1197; see Wescott, 397 A.2d at 166. In this case, going beyond the plain language of section 2902 — which the Court does here by reading an exclusion into the statute that does not exist — “defeats] the plain purpose of the statute,” Bob Jones Univ. v. United States, 461 U.S. 574, 586, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), and thwarts the Legislature’s support for “a strong public policy in favor of the just compensation of accident victims.” Beal, 2010 ME 20, ¶34, 989 A.2d 733 (quotation marks omitted).
[¶ 53] In the absence of any language in section 2902 that suggests that its reach is limited to primary policies, the statute should not be read so narrowly in order to avoid its application when an injured insured has elected to purchase an umbrella policy with higher liability coverage. The Court bends over backward to avoid applying section 2902 to umbrella policies and, in doing so, contravenes our mandate to interpret “the protections of section 2902 liberally in favor of insureds and strictly against insurers.” Beal, 2010 ME 20, ¶ 34, 989 A.2d 733 (quotation marks omitted).
[¶ 54] For these reasons, I conclude that the uninsured motorist statute unambiguously applies to Dickau’s umbrella policy. Accordingly, I would vacate the judgment of the Superior Court and remand for judgment in favor of Dickau.

. Notably absent from the Court’s opinion is any reference to Insurance Company of the State of Pennsylvania v. Johnson, 186 Vt. 435, 987 A.2d 276 (2009). The Court correctly notes that it applies the law of Maine, not Vermont, to the present action. Court’s Opinion ¶ 3 n.l. It thus ignores Johnson completely but goes on to cite cases from, inter alia, Colorado, Alabama, Oregon, Kansas, Montana, Florida, Massachusetts, New Mexico, Washington, Louisiana, Oklahoma, Texas, South Carolina, and Illinois to make its point. For the reasons discussed in Johnson, those cases are inapplicable to the circumstances here. See Johnson, 987 A.2d at 282 ("More important than the numbers, however, are the reasons underlying the decisions.... [C]ourts applying UM/UIM statutes predicated' — like [the Vermont UM statute] — on the type of coverage rather than the type of policy have concluded that the statute's plain language *635 compels the inclusion of excess or umbrella policies.”).